FILED

2005 Apr-14  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **RAYMON GLENN OVERDEAR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CR 94-B-0106-M** |
| **vs.** | ) | **CV 97-B-8050-M** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

This case is presently before the court on petitioner's Objections to Magistrate's Recommendation. (Doc. 138.)[1]  For the reasons set forth below, the court is of the opinion that petitioner's Objections, (*id*.),  are due to be overruled, the magistrate judge's Findings and Recommendation, (doc. 137), will be adopted and the petitioner's Second Amended Motion to Vacate and for a New Trial, (doc. 110), will be denied.

Petitioner, Raymon Overdear, was tried before a jury in this court on two counts of conspiracy to possess with intent to distribute marijuana, one count of conspiracy to possess with intent to distribute cocaine, one count of conspiracy to possess cocaine, and one count of possession with intent to distribute cocaine.  The jury found petitioner guilty on July 13, 1994, (doc. 49), and the court sentenced petitioner to 200 months of imprisonment on each count with the sentences to run concurrently, (doc. 62 at 52-53).   Petitioner appealed his

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

conviction, (doc. 57), which the Eleventh Circuit Court of Appeals affirmed on May 20, 1996, (doc. 66).

Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (doc. 68), on August 8, 1997; he filed an amended motion, (doc. 88), on September 30, 1998.  On October 29, 1999, petitioner filed a Second Amended Motion to Vacate and For a New Trial.  (Doc. 110.)

The magistrate judge set petitioner's motion for an evidentiary hearing.  (Doc. 136.) However, petitioner chose to submit his motion without presenting testimonial evidence at this hearing.  (Doc. 137 at 2.)  On June 14, 2002, the magistrate judge entered his Findings and Recommendation, recommending that petitioner motion be denied.  (Doc. 137.) Petitioner filed objections to the magistrate judge's Findings and Recommendation.  (Doc. 138.)  The court's review of the portions of the Findings and Recommendation to which petitioner has objected is *de novo*.  *See* 28 U.S.C. § 636(b)(1)(B).

## DISCUSSION

"Under Section 2255, [petitioner has] the burden of showing that he was entitled to relief."  *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978)(citing *Coon v. United States*, 441 U.S. 279 (5th Cir.), *cert. denied*, 404 U.S. 860 (1971));[2] *see also Day v. United States*, 428 F.2d 1193, 1195 (8th Cir. 1969)("The petitioner bears the burden of proof upon

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

each ground presented for relief in a Section 2255 proceeding.").  Petitioner has the burden

of proving "not merely that the errors at his trial created a possibility of prejudice, but that

they worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  Based on its

review of the record, the court finds petitioner has not carried this burden.

## A.  OBJECTIONS RELATED TO THE TESTIMONY OF TONY HUNTER

### OBJECTION I.

**Petitioner objects to the finding that the law requires him to show that Hunter's alleged inconsistent testimony used in his trial – as opposed to that used in the trial of Galloway – was false in order to show a due process violation.  Alternatively, petitioner objects to the Magistrate Judge's finding that petitioner did not make a sufficient showing that the testimony used in his trial was false.**

### OBJECTION II.

**Petitioner objects to the findings of the magistrate judge that he did not show the testimony of Hunter in petitioner's trial to be false.**

Plaintiff's Second Amended Motion to Vacate and for a New Trial contends, "[t]he

Government knowingly used and willfully concealed the perjured testimony of James Tony

Hunter to obtain [petitioner's] conviction[ ] on Count Five of the indictment."  (Doc. 110 at

5.)

A new trial should be ordered, on the basis of the prosecution's use of perjured testimony, if the defendant establishes that 1) the prosecution's case included perjured testimony; 2) the prosecution knew, or should have known, of the perjury; and 3) there is any likelihood that the false testimony could have affected the judgment of the jury.  However, ***mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony***.  Moreover, the alleged perjured testimony

> must bear a direct relationship to the defendant's guilt or innocence. Finally, when a defendant alleges that the prosecution used perjured testimony, our decisions have inquired into whether the defendant had adequate opportunity to expose the alleged perjury on cross-examination.

*United States v. Adcox*, 19 F.3d 290, 295 (7th Cir. 1994)(internal quotations and citations omitted).

Petitioner argues that the magistrate judge erred in finding the testimony of James Anthony Hunter in petitioner's trial was not false, and that petitioner could not prove the introduction of such testimony violated his due process rights. The court agrees with the magistrate judge's findings that petitioner did not prove that Hunter's testimony at his trial was false. Moreover, to the extent Hunter's testimony is inconsistent with his testimony in the Galloway trial or with the testimony of other witnesses, such inconsistency does not give rise to "error of constitutional dimensions." *Frady*, 456 U.S. at 170.

The court notes that petitioner must prove that Hunter's testimony at his trial was false, not merely inconsistent with his testimony in the Galloway trial. The Supreme Court has held, "A mere claim that a witness gave inconsistent testimony is not enough to charge the prosecution's knowing use of false testimony; it may well be that the witness' subsequent statements were true, in which event the claim of inconsistency is not a constitutional objection." *Price v. Johnston*, 334 U.S. 266, 288 (1948), *abrogated on other grounds McCleskey v. Zant*, 499 U.S. 467 (1991); *see also United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995)("'Mere inconsistency' between witnesses' testimony is not necessarily perjury, and not every contradiction is material. 'A challenge to evidence through another

witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony.'")(quoting *United States v. Nelson*, 970 F.2d 439, 443 (8th Cir. 1992), *cert. denied*, 506 U.S. 903 (1992)).[3]

In order to establish error sufficient to support a reversal of his conviction, petitioner must establish "there is a reasonable probability that, but for [the government's introduction of the alleged perjured testimony], the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985)(quoting *Strickland v. Washington*, 446

---

[3]Petitioner contends, "[I]t is sufficient to show a violation of due process by showing that the . . . Federal prosecutor in separate federal criminal prosecutions . . . offered contradictory or inconsistent factual premises." (Doc. 138 at 2.) In support of his objection, petitioner cites the court to two decisions involving the prosecutor's use of inconsistent **theories**. (*Id.* at 4-5 (citing *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000); *Thomas v. Calderon*, 120 F.3d 1045 (9th Cir. 1997)).)

However, the government's theory in Galloway's case is not **inherently inconsistent** with its theory in petitioner's case; therefore, the government did not violate petitioner's due process rights by having inconsistent positions in the two trials. *See Parker v. Singletary*, 974 F.2d 1562, 1578 (11th Cir. 1992)(no due process violation occurred when state failed to disclose alternate position taken in three trials of co-defendants "because there was no necessary contradiction between the state's positions in the trials"); *Drake v. Francis*, 727 F.2d 990, 994 and n.4 (11th Cir. 1984)(defendant's due process rights are not violated by inconsistent theories unless he can prove that the theory is inconsistent with his guilt).

The court also finds that the inconsistencies in Hunter's testimony did not violate petitioner's right to due process "because there was no **necessary contradiction** between the [Government's] **positions** in the trials of [petitioner and Galloway]." *See Parker v. Singletary*, 974 F.2d 1562, 1578 (11th Cir. 1992). In Galloway's trial, Hunter testified, and the government argued, that Galloway left Houston without any marijuana after DeLeon was killed. The government did not offer any testimony or argue any facts relating to Hunter's dealing with petitioner in Galloway's trial. In petitioner's trial, Hunter again testified that Galloway left Houston without any marijuana after DeLeon was killed. The government's positions were not necessarily contradictory.

U.S. 668, 694 (1984)).   A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 446 U.S. at 694).

Viewing the record, as well as the entire transcript of the Galloway trial, the court finds that Hunter's testimony regarding the details of his drug deal with George Hall, occurring after June 27, 1998, was "merely inconsistent" with his testimony in the Galloway trial, and that the inconsistencies in his testimony were not so material as to have undermined confidence in the verdict against petitioner.

Testimony in the trial of Roy Galloway, CR 91-N-0261-NE, demonstrated that Hunter and Hall had one marijuana deal between June 27, 1989, the day David DeLeon was murdered,[4] and October 10, 1989, when Hall and Hunter were arrested. (Galloway Tr. at 135 (Hunter testified that between that last part of June and October 10th, he might have made one more load, but he was not positive.); *id.* at 110 (Hall testified that he and Hunter did one deal between June 1989 and October 1989; this deal was probably in August, but might have been in July.).)[5]   Hunter testified that he and Galloway left Houston after DeLeon's death without any marijuana. (*Id.* at 135.)

In petitioner's trial, Hunter testified that  Galloway left Houston on or about June 28, 1989, without any marijuana. (Doc. 61, Vol. II, at 86-87.)  However, he testified that he had

---

[4]DeLeon was killed while trying to purchase marijuana in Mexico for Hall and Hunter. (Tr. at 74-75.)  He was sent to Mexico with $260,000 of Hunter's money. (*Id.*)

[5]The transcript of Galloway's trial is "defendant's Exh. 3," submitted at the hearing held on May 16, 2001.

stayed in Houston and had made another deal with Hall for 400 pounds of marijuana somewhere around July 2nd, which he and Anthony Spurgeon brought back to Alabama. (*Id.* at 88-89.)[6]  He testified that he "believed" the deal was made before July 4, 1989, but that he did not "really know" as it was "too far for me to remember back."  (*Id.* at 89.) Hunter testified that he delivered a hundred pounds of the marijuana received in this deal to petitioner.  (*Id.* at 98-99.)

Spurgeon testified that he and Hunter left Houston after DeLeon's murder "as quickly as possible," and they did not bring any marijuana back on that day.  (Doc. 110, Ex. O ¶¶ 3-4.)  His affidavit is silent as to whether he returned to Houston with Hunter in July or August to get marijuana.

The notes of petitioner's counsel of his meeting with Hunter prior to petitioner's trial indicate that Hunter told him that "[t]he last time that he dealt with [petitioner] was shortly *after* [DeLeon] was killed in June of 1989."  (Ex. R at 3(emphasis added).)  The notes also state that Hunter had testified against Galloway.  (*Id.* at 1-2.)  Moreover, during petitioner's trial, his counsel cross-examined Hunter using Hunter's statement from August 29, 1991, (doc. 61, Vol. III, at 149-50); the Galloway trial was in March 1992.

Hunter's testimony in petitioner's trial was not inconsistent with testimony in the Galloway trial regarding the fact that Hunter and Hall did a marijuana deal after June 27,

---

[6]Hunter testified that he stayed in Houston "four or five days after [DeLeon] got killed and then . . . George come up with that 400 pounds, and I brought it back."  (Doc. 61, Vol. II, at 88.)

1989 and before October 10, 1989.  His testimony in petitioner's trial was inconsistent with his testimony in the Galloway trial on the issue of whether he had stayed in Houston and made the deal with Hall four or five days after DeLeon's death on June 27, 1989, *or* whether he left Houston after DeLeon's death and returned before October 1989 to make the deal with Hall.  The court finds this inconsistency is not sufficient to undermine te confidence in the verdict or to show a reasonable probability of a different verdict .  Nothing in the record indicates that Hunter deliberately lied at either trial; rather, the court finds that the inconsistencies in his testimony are the result of confusion, mistake, or a bad memory.[7]

Petitioner contends:  "In the instant case, the government could not have prosecuted [him] on [Count Five of the superceding indictment] unless Hunter ***changed*** his story because the statute of limitations would have barred the prosecution."  (Doc. 138 at 5 (emphasis added).)  Hunter testified that he delivered marijuana to petitioner, and he had acquired this marijuana from Hall  in Houston after June 27, 1989.  Testimony in the Galloway trial is not inconsistent with the jury's finding that Hunter delivered marijuana to petitioner after June 4, 1989.  The evidence in the Galloway trial is that Hunter and Hall had a drug deal after June 27, 1989 and before October 1989, in July or August 1989.  The court finds that a comparison of the testimony in the Galloway trial and petitioner's trial does not support a finding that the government caused Hunter to change his testimony, ***after*** the

---

[7]The court notes Hunter testified in petitioner's trial more than five years after the summer of 1989 when the deal occurred.  He also completed only the third grade in school. (Doc. 61, Vol. II, at 114.)  AUSA McGregor described Hunter as "[t]he next thing to a cave dweller."  (*Id.*, Vol. IV, at 485.)

Galloway trial, to create a drug deal between Hunter and petitioner within the statute of limitations.  This finding is further supported by the fact that petitioner possessed Hunter's August 1991 statement, implicating petitioner, yet never questioned Hunter on this point.

The court finds that petitioner's objections I and II are not well taken; these objections are due to be overruled.

## OBJECTION III

**Petitioner objects to the magistrate judge's Finding that the Government was under no duty to produce the testimony of Hunter in the Galloway trial to petitioner at his trial despite petitioner's request for exculpatory materials under *Brady* and the Jencks Act.**

### 1. *Brady* Violation

Quoting *Moon v. Head*, the magistrate judge correctly laid out the elements petitioner must prove to establish a *Brady* violation:

> "(1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense."

(Doc. 137 at 12 (quoting *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002), *cert. denied* 537 U.S. 1124 (2003).)  The magistrate judge found that petitioner had "failed to show that he could not obtain the trial transcript [of Hunter's testimony in the Galloway trial] with reasonable diligence or that the government suppressed the transcript."  (*Id.*)

Petitioner argues, "There is nothing in the record to show that [petitioner] knew or was legally or constructively charged with knowing anything about Galloway or his trial."  (Doc.

138 at 22.)  The court disagrees.  In fact, defense counsel's notes of his meeting with Hunter, submitted by petitioner, sufficiently demonstrate that his counsel knew, actually or constructively, that Hunter had testified in Galloway's trial.  (Doc. 110, Ex. R.)  The transcript of the Galloway trial was filed with the court in May 1992.  The court finds that petitioner's counsel, with due diligence, could have obtained a copy of the trial transcript. *See Moon*, 285 F.3d at 1308.

Therefore, the court finds that the record supports the magistrate judge's finding that petitioner failed to establish a *Brady* violation with regard to Hunter's prior trial testimony. (Doc. 137 at 12-13.)  Petitioner's objection III, regarding the alleged *Brady* violation, is due to be overruled.

### 2.  Jencks Act Violation

Several circuits have held that prior trial testimony is not within the scope of the Jencks Act because the witness's statement is a matter of public record.  *United States v. Chanthadara*, 230 F.3d 1237, 1254-55 (10th Cir. 2000), *cert. denied* 534 U.S. 992 (2001)(collecting cases).[8]  This court agrees with this line of cases.

---

[8]The court in *Chanthadara* found:

> Several circuits have held that prior trial testimony is not within the scope of the Jencks Acts because the witness statements contained therein are a matter of public record rather than being secreted within the government's files.  *See United States v. Albanese*, 195 F.3d 389, 393 (8th Cir. 1999)("[The government witness] gave his prior testimony at a public proceeding, so the government's failure to turn over a transcript of prior testimony violated neither [*Brady v. Maryland*, 373 U.S. 83 (1963),] nor the Jencks Act"); *United States v. Jones*, 160 F.3d 473, 479 n.5 (8th Cir. 1998)(stating that matters of

The petitioner's objection III, regarding the alleged Jencks Act violation, is due to be overruled.

## B.  OBJECTIONS RELATED TO JERRY MICHAEL LAWRENCE

### OBJECTION IV

**Petitioner objects to the magistrate judge's Findings that Jerry  Michael Lawrence did not commit perjury when responding to questions by AUSA McGregor as to the nature of his deal with the government in exchange for his testimony at petitioner's trial**.

The magistrate judge stated:

> [Petitioner] argues that Lawrence testified falsely with respect to the plea agreement in the Northern District of Georgia because he failed to disclose that under his negotiated plea agreement, eight of the nine counts were

---

public record are "not within the scope of the Jencks Act"); *United States v. Chen*, 131 F.3d 375, 378 (4th Cir. 1997)(holding government's failure to provide defendants with transcript copy of witness's prior testimony in juvenile proceeding did not violate Jencks Act because government did not have custody of transcript of sealed juvenile proceedings); *United States v. Isgro*, 974 F.2d 1091, 1095 (9th Cir. 1992) (holding that "trial testimony is not within the scope of the Jencks Act"); *United States v. Hensel*, 699 F.2d 18, 39-40 (1st Cir. 1983)(stating that "a transcript of a witness's testimony in a prior trial does not come within the language of the Jencks Act"); *United States v. Lurz*, 666 F.2d 69, 79 (4th Cir. 1981)(concluding no Jencks violation by the government where the defendant was unable to obtain a transcript of a government witness's prior testimony because the transcript was in the possession of the court reporter, who is not an agent of the government); *United States v. Harris*, 542 F.2d 1283, 1293 (7th Cir. 1976)("[A] transcript of a witness's testimony in a prior trial is not within the Jencks Act."); *United States v. Munroe*, 421 F.2d 644, 645 (5th Cir. 1970)(same).  In accordance with the reasoning of our sister circuits, we similarly conclude transcripts of prior testimony are not Jencks material.

*Chanthdara*, 230 F.3d 1254-55.

dismissed and the government agreed not to bring additional charges against Lawrence, with the exception of violent crimes.

(Doc. 137 at 16.)   With regard to this argument, the magistrate judge held:

> Lawrence's motive for testifying was clear as he stated that in exchange for his testimony, he expected the prosecution to notify the Northern District of Georgia of his cooperation and that such cooperation would then be considered in his Georgia case.  . . .  There was no reasonable likelihood that the additional information would have affected the jury's judgment.

(*Id.* at 18 (citing *Francis v. Dugger*, 908 F.2d 696, 701 (11th Cir. 1990)).)

Petitioner objects to the magistrate judge's finding "that since Lawrence admitted to testifying in exchange for some consideration from the Government, the testimony as to the true deal with the government 'would not have affected the jury's judgment.'" (Doc. 138 at 25 (quoting doc. 137 at 18).)[9]   The court notes that Lawrence stated at trial the he was testifying because he wanted to "cut the amount of time [he was] going to do federally." (Doc. 61, Vol. III, at 217-18.)  Lawrence stated his understanding of his agreement to testify in petitioner's case as follows:  "I will come here and testify.  I will receive a letter from the prosecutor just to let them know that I did testify . . . .  That's all I know, because they didn't tell me nothing else I was getting or nothing."  (*Id.* at 156.)   Lawrence also testified that the AUSA had promised to inform the "federal authorities in Georgia  . . . of [his] cooperation," and that he had promised not to "prosecute [him] . . . for any charges stemming from the incident" about which he testified at petitioner's trial.  (*Id.* at 157.)  On cross examination,

_____

[9]The magistrate judge actually found, "There was no reasonable likelihood that the additional information ***would have affected*** the jury's judgment." (Doc. 137 at 18 (emphasis added).)

petitioner's counsel asked Lawrence, "[Y]ou could be facing a lost of time if you didn't come over here and testify against [petitioner], couldn't you?"  (*Id.* at 237.)  To which Lawrence answered, "Well, I don't know.  I'm hoping that I don't."  (*Id.*)

> The law is well-established that –

> Undisclosed impeachment evidence is not ***material*** in the *Brady* sense when, although "possibly useful to the defense," it is "not likely to have changed the verdict."   *Giglio v. United States*, 405 U.S. [150,] 154 [(1972)](internal quotation marks omitted).  For example, where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.

*United States v. Avellino*, 136 F.3d 249, 257 (2d Cir. 1998)(emphasis added); *see Byrd v. Collins*, 209 F.3d 486, 518-19  (6th Cir. 2000).

This Circuit has held that "failure to detail ***every*** provision of [an] immunity agreement with the [government] does not constitute ***false*** testimony."  *Routly v. Singletary*, 33 F.3d 1279, 1287 (11th Cir. 1994)(emphasis added).  The court finds Lawrence's testimony to the effect that he was motivated to testify by a plea agreement sufficiently "communicated [his] position to the jury and the jury was sufficiently able to test [his] credibility in light of [this] position."  *See id.* at 1287; *see also Fisher v. Nix*  920 F.2d 549, 551 (8th Cir. 1990)("Although we find Miller's testimony misleading with respect to the nature of the plea agreement, we agree with the district court that the jury's judgment would not have been different even if the prosecutor had corrected Miller's statements at trial.  The jury was able to adequately assess Miller's credibility because it was aware she had entered into an

agreement with the government."); *Francis v. Dugger*, 697 F. Supp. 472, 477 (S.D. Fla. 1988)(false, uncorrected testimony regarding plea agreement was harmless error when "[t]he record was abundantly clear that [witness] was portrayed as one motivated by her own self-interest to testify), *aff'd*, 908 F.2d 696 (11th Cir. 1990), *cert. denied*, 500 U.S. 910 (1991). Therefore, the court finds, based upon Lawrence's direct testimony and his cross-examination, that "[t]he jury was able to adequately assess [his] credibility because it was aware [he] had entered into an agreement with the government" to testify. *See Fisher*, 920 F.2d at 551.

The court finds the record clearly demonstrates that Lawrence was motivated to testify against petitioner based on his agreement with the government; thus, the government's failure to supplement Lawrence's testimony with additional terms of his plea agreement is harmless. Petitioner's objection IV is due to be overruled.

### OBJECTION V

**The magistrate judge erred in finding that there was no evidence that AUSA McGregor knew the testimony of Lawrence that he only had two felony convictions was false.**

The court finds no evidence that the AUSA was aware that Lawrence's criminal history was other than as presented at trial. Nevertheless, the court finds the existence of two additional drug-related convictions to be immaterial. *See Avellino*, 136 F.3d at 257.

The court finds that evidence of Lawrence's two undisclosed drug-related convictions – in light of all the testimony regarding his extensive history of dealing drugs, his present incarceration in Georgia on drug charges, and his guilty plea on federal drug charges in

14

Georgia – is cumulative impeachment evidence and not material.  Petitioner's objection V is due to be overruled.

**OBJECTION VI**

**Petitioner objects to the finding of the magistrate judge that Lawrence did not testify falsely regarding his drug transactions with Van Edward Spivey.**

Petitioner contends that "the government in its answer to [the Second Amended Petition] does not . . . deny Lawrence lied about selling to Spivey the large amounts of cocaine he claimed to have gotten from [petitioner]  The magistrate judge took it upon himself to make this denial for the government.  This he was not authorized to do."  (Doc. 138 at 30-31.)

The court disagrees.  The magistrate judge has full authority to determine whether, after consideration of the testimony at issue, petitioner's asserted ground for reversing his conviction has merit.  The magistrate judge considered Lawrence's testimony regarding his drug dealings with petitioner and his subsequent dealing of the drugs he had received from petitioner, including his deals with Spivey. He also considered the evidence submitted by petitioner.  He found that petitioner had not shown that Lawrence's testimony was perjured or that it was inconsistent.[10]

This court has reviewed the same record evidence *de novo* and, based on that review, agrees with the magistrate judge's finding that Lawrence's testimony regarding his drug

---

[10]*See* doc. 137 at 13-16.

transactions with Spivey did not violate petitioner's due process rights.  Petitioner's objection

VI will be overruled.

## C.  OBJECTIONS REGARDING TESTIMONY OF HARRY S. GLANTON

### OBJECTION VII

**Petitioner objects to the magistrate judge's Findings that Glanton did not give perjured testimony as to the dates on which he purchased cocaine from petitioner and about charges he had pending against him in Georgia.**

### 1.  PERJURY REGARDING DATES OF COCAINE PURCHASES

Petitioner argues, "Glanton gave such contradictory dates as to alleged cocaine

purchasers [sic] from [petitioner] that perjury is the only explanation." (Doc. 138 at 34.)  In

his Second Amended Petition, petitioner argues:

> The testimony offered by Glanton in support of [Count Four] was so incredible, contradictory, and inconsistent that this [was] perjury and the prejudicial spillover [from] Hunter and Lawrence requires vacation of his conviction.
>
> . . . Glanton testified that on one occasion he purchased half a kilogram of cocaine from the Movant for $18,000.00.  [(Doc. 61, Vol. III, at 263.)]  This event was the basis of Count Four. . . . [W]ith regard to the alleged cocaine transaction, Glanton's testimony was incredibly contradictory.
>
> First, he testified this occurred after Lawrence's "arrest" in September, 1991 (referring to the search of Lawrence's residence), which placed it outside the period alleged in the indictment.  He then testified it occurred in 1989 and "'90, '89 and '90." [(*Id.* at 272.)]  Finally, the Government did get [Glanton] to say that the transaction occurred about six months before Lawrence's "arrest" in September, 1991.

(Doc. 110 at 57-58.)

After reviewing Glanton's testimony, the magistrate judge held, "Because the jury heard all of the conflicting testimony of Glanton concerning the dates, the alleged perjured testimony could not affect the judgment of the jury." (Doc. 137 at 19.)[11]  This finding is

---

[11]The inconsistency of Glanton's testimony regarding the date of the cocaine deal was considered by the trial court on petitioner's Motion for Judgment of Acquittal. The following discussion was held:

THE COURT:  At one point, he said these deals would have occurred during the timeframe January to September, but okay.  Well, I think there's still enough evidence to deny a motion for judgment of acquittal, but my only question would be the timeframe being maybe somewhat different or a little different.

[AUSA] MR. McGREGOR:  I think what he ultimately said was the two marijuana deals happened within two months during a timeframe of about one and a half weeks, but within two months after the arrest.  He said the cocaine took place prior to that as early as six months prior to.

[DEFENDANT'S COUNSEL] MR. ANDREWS:  Well, actually, I recall him saying it several different ways.

MR. McGREGOR:  He did.

MR. ANDREWS:  I don't know when they occurred.

MR. McGREGOR:  He initially testified that his dealings occurred after, and that was his initial testimony, that they all occurred after the arrest.

MR. ANDREWS:  That's right.

MR. McGREGOR:  He then got straightened out both on direct and cross.

THE COURT:  He clearly said later several times there were two marijuana deals after the arrest, and the cocaine deal was before.  Well, my only thing on that one was the timeframe, but with regard to all of the counts, I think there's more than sufficient evidence for a jury to . . . find the defendant

supported by the transcript of Glanton's testimony and is a sufficient ground for denying

petitioner's Second Motion to Vacate based on Glanton's alleged perjured testimony related

to the date of his cocaine deal with petitioner.  *See United States v. Blair*, 958 F.2d 26, 29 (2d

Cir. 1992)("perjured testimony must have remained ***undisclosed*** during trial in order to

require reversal of a conviction")(emphasis added), *quoted in United States v. Bailey*, 123

F.3d 1381, 1396-37 (11th Cir. 1997).  Because Glanton's conflicting testimony regarding the

date of his cocaine deal with petitioner was actually heard by the jury, his credibility was an

issue squarely before the jury and not a ground for reversing petitioner's conviction.

Therefore, petitioner's objection VII with regard to Glanton's testimony regarding the

dates of his drug deals with petitioner is due to be overruled.

## 2.  PENDING CHARGES

Petitioner contends that the magistrate judge erred in finding that "Glanton may not

have lied about having six pending charges and two driving under the influence charges

against him in Georgia because the indictment on which Overdear relies to prove this may

have been issued after Overdear's trial."  (Doc. 138 at 34.)  Glanton testified at trial that he

had been arrested in March 1994 and that he had a charge of marijuana possession pending

in Summerville, Georgia.  (Doc. 61, Vol. III at 273.)  The indictment arising out of his March

1994 arrest charged Glanton with unlawful possession of more that one ounce of marijuana,

---

guilty beyond a reasonable doubt.

(Doc. 61, Vol. III, at 362-63.)

Count 5, and unlawful possession of marijuana with intent to distribute, Count 6.  (Doc. 110, Ex. N.)  It also charged him with unlawful possession of Hydrocodone, Count 1; unlawful possession of Hydrocodone with intent to distribute, Count 2; unlawful possession of Alprazolam, Count 3; unlawful possession of Alprazolam with intent to distribute, Count 4; driving under the influence of intoxicating drugs, Count 7; and driving under the influence while he had marijuana in his blood and urine, Count 8.  (*Id.*)  However, the indictment is not dated and does not otherwise indicate when it was returned.  (*Id.*)  Petitioner has included a document, entitled "Final Disposition," which indicates that Glanton pled guilty to Count 1, possession of Hydrocodone, on March 1, 1995, in case number, 95-CR-13,896.  (*Id.*)[12]

Nothing in the record indicates that Glanton was "charged" in this indictment, and, thus, had "pending charges," on July 12, 1994, the day he testified at petitioner's trial. Therefore, the court finds that the magistrate judge did not err in his finding that petitioner had failed to carry his burden to show Glanton **lied** about his pending charges when he testified at petitioner's trial.  Petitioner's objection VII regarding Glanton's testimony about his "pending charges" will be overruled.

## D.  OBJECTIONS BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL.

### OBJECTION VIII

**Petitioner objects to the findings of the magistrate judge that his counsel was not ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).**

---

[12]The court takes judicial notice that case numbers begin with the number of the year in which the case was filed.  Therefore, the case, 95-CR-13,896, was filed in 1995.

Petitioner contends his counsel was constitutionally ineffective, and objects to the magistrate judge's finding otherwise, for three reasons:

> (1) failure to use prior inconsistent statements of Lawrence to impeach him; (2) failure to discredit Lawrence through cross-examination of the GBI agent and prosecution witness Tarvin; and (3) failure to point out a variance between the bill of particulars and the indictment.

(Doc. 138 at 35.)

The standards for evaluating petitioner's claims of ineffective assistance of counsel are well settled:

> It is well established that the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668(1984), is the "controlling legal authority" to be applied to ineffective assistance of counsel claims. *Williams*, 529 U.S. at 406 (O'Connor, J., concurring). To succeed on a claim of ineffective assistance of counsel, the petitioner must show *both incompetence and prejudice*. *Chandler v. United States*, 218 F.3d 1305, 1312 (11th Cir. 2000) (*en banc* ), *cert. denied*, 531 U.S. 1204 (2001). *The petitioner's burden of demonstrating prejudice is high*. Under the prejudice prong, "[i]t is not enough for the defendant to show that the errors had *some conceivable effect* on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, the petitioner "must show that 'there is *a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different*.'" *Chandler*, 218 F.3d at 1312-13 (quoting *Darden v. Wainwright*, 477 U.S. 168, 184 (1986)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Wellington v. Moore*,  314 F.3d 1256, 1260 (11th 2002)(emphasis added).  In assessing the competence of petitioner's counsel, the reviewing court "must keep in mind that '[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004)(quoting *Strickland*, 466 U.S. at 689). The court

> must indulge a strong *presumption* that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the ***presumption*** that, under the circumstances, the challenged action might be considered sound trial strategy. This presumption is even stronger when the reviewing court is examining the performance of an experienced trial counsel.

*Crawford v. Head*, 311 F.3d 1288, 1297 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) and citing *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000)(*en banc*), *cert. denied*, 531 U.S. 1204 (2001))(internal citations and quotations omitted; emphasis added). The court notes that petitioner's trial counsel were experienced.

The magistrate judge found that petitioner "failed to disprove the presumption of competence of trial counsel," and, thus, he failed to carry his burden of showing incompetence on the part of trial counsel. (Doc. 137 at 26.) The court agrees. Petitioner's objections to the magistrate judge's Findings and Recommendations regarding his ineffective assistance of counsel claim is due to be overruled.

## E.  OBJECTIONS RELATED TO EXCULPATORY MATERIAL NOT PROVIDED

### OBJECTION IX

**Petitioner objects to the failure of the magistrate judge to consider the following grounds of relief argued and presented by Petitioner in support of his position regarding exculpatory material the government did not provide petitioner.**

"Federal criminal defendants have a due process right to disclosure of evidence that is favorable to the accused on the issues of guilt and punishment or evidence that would impeach the government's witnesses, including inconsistent statements by the witness, or plea and immunity agreements." *United States v. Rudolph*, 224 F.R.D. 503, 511 (N.D. Ala.

21

2004)(citing *Giglio*, 405 U.S. at 154; *Brady*, 373 U.S. at 87).  Petitioner bears the burden of establishing that the government did not disclose exculpatory material.  *See United States v. Aubin*, 87 F.3d 141, 148 (5th Cir. 1996).

### 1. Statements from Hunter, Hall, and Spurgeon that Hunter did not bring marijuana back from Houston after DeLeon's murder.

Petitioner has not demonstrated the existence of prior statements of Hunter, Spurgeon, and Hall that the government failed to disclose or that these prior undisclosed statements, alleged to exist, contain exculpatory evidence.  Therefore, petitioner's objection IX with regard to the prior statements of Hunter, Hall, and Spurgeon will be overruled.

### 2. Complete details of the plea agreement with Hunter and details of the threats and promises made to Hunter

For the reasons set forth above, the court finds that failure to provide "the complete details" of Hunter's plea agreement and "threats and promises" to Hunter in light of Hunter's testimony regarding his deal with the government, does not provide sufficient constitutional error to vacate petitioner's conviction.

Therefore, petitioner's objection IX with regard to Hunter's plea agreement and "threats and promises" to Hunter will be overruled.

### 3. Statements of Spivey regarding details of Lawrence's cocaine deals with Spivey; documents showing Spivey was incarcerated during time Lawrence said Spivey sold cocaine for him; Spviey's presentence report; and information used by government to prove amount of cocaine involved in "Spivey-Lawrence conspiracy."

For the reasons set forth above the court finds that any error related to the alleged inconsistencies regarding the cocaine deals between Lawrence and Spivey does not provide sufficient constitutional error to vacate petitioner's conviction in light of the record evidence.

Therefore, petitioner's objection IX with regard to documents and statements regarding Lawrence's dealings with Spivey will be overruled.

### 4. Lawrence's plea agreement, criminal history, and statements regarding purchase/distribution of cocaine.

For the reasons set forth above the court finds that any error related to the government's alleged to failure to produce Lawrence's plea agreement or evidence of his criminal history does not provide sufficient constitutional error to vacate petitioner's conviction in light of direct and cross examination of Lawrence regarding his motivation for testifying.

Therefore, petitioner's objection IX with regard to Lawrence's plea agreement, criminal history, and statements regarding purchase/distribution of cocaine will be overruled.

### 5. Documents showing the "truth" concerning Glanton's pending charges at the time he testified.

As set forth above, the court finds petitioner has failed to prove any constitutional error sufficient to vacate his conviction based upon failure to be informed of the nature of the charges pending against Glanton.  Petitioner failed to demonstrate that Glanton had been indicted and, thus, had pending charges in Georgia, before Glanton testified at petitioner's trial.

Therefore, petitioner's objection IX with regard to the "truth" regarding Glanton's pending charges will be overruled.

**6. Jencks Act violations**.

Petitioner argues, "The Government failed to produce statements of its trial witnesses pursuant to the Jencks Act, Rule 26.2 Fed. R. Crim. P, and the order of the trial court." (Doc. 138 at 50.)  He contends, "First, there is no Government response at all with regard to statements of witnesses other than testimony at former trials or as to any basis for producing witnesses' statements other than 18 U.S.C. § 3500." (*Id.*)  However, in this objection, petitioner did not name any particular witness whose prior statement, not prior trial testimony, was not produced.  Therefore, as to any such witness statement, petitioner's objection is overruled.

Petitioner also argues, "Second, former testimony of witnesses at other trials clearly comes within the language of § 3500." (*Id.*)  This court has held, *supra*, that prior trial testimony is not within the scope of § 3500 because such witness statements are of public record. *See Chanthadara*, 230 F.3d at 1254-55.  Petitioner's objection to not being provided former trial testimony of witness is overruled.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that the magistrate judge's Findings and Recommendation is due to be adopted, petitioner's objections to the Findings and Recommendation are due to be overruled, and petitioner's Second Amended Motion to Vacate and for New Trial, (doc. 110), is due to be denied.

24

**DONE** this 14th day of April, 2005.

_____
_____
_____SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE